(C. D. 181)

Fred K. Lovell *v.* United States

•

# United States Customs Court, Third Division

(Decided June 15, 1939)

*John F. Kavanagh* for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett* and *Joseph F. Donohue*, special attorneys), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; CLINE, J., not participating

EVANS, Judge: This is an action against the United States brought to recover certain sums of money paid on an importation of 42 boxes of fresh fish weighing 2,100 pounds. The merchandise. entered the United States at Rouses Point, N. Y., where it was inspected by the United States customs inspectors and duty was duly assessed thereon at three-fourths of 1 cent per pound under the provisions of paragraph 717 of the Tariff Act of 1930. Thereupon the merchandise was released to the owner or consignee, according to the testimony. It appears that the fish were subsequently seized at the market in New York City by order of the Federal Food and Drug Administration, acting under authority of section 10 of the Food and Drug Act. Thereafter they were duly libeled in the United States District Court and ordered condemned and disposed of according to law.

The consignee, who was the broker, asked that the protest be acted upon by the Bureau of Customs and not by the Customs Court. This request was complied with and thereafter the matter was brought before the United States Customs Court before a judge on circuit at which time a motion was made to dismiss the proceeding because of the failure of the importer to comply with the provisions of section 506 (2) of the Tariff Act of 1930. That section is as follows:

SEC. 506. ALLOWANCE FOR ABANDONMENT AND DAMAGE.

Allowance shall be made in the estimation and liquidation of duties under regulations prescribed by the Secretary of the Treasury in the following cases:

\* \* \* \* \* \* \*

(2) PERISHABLE MERCHANDISE, CONDEMNED.—Where fruit or other perishable merchandise has been condemned at the port of entry, within ten days after landing, by the health officers or other legally constituted authorities, and the consignee, within five days after such condemnation, files with the collector written notice thereof, an invoiced description and the location thereof, and the name of the vessel or vehicle in which imported.

From the evidence introduced by the importer it is clear that this is a case wherein the United States Customs Court cannot order an allowance to be made since the merchandise had been released from

customs custody and was seized in a market because it did not comply with the public health laws. It was thereafter condemned and destroyed by order of the United States District Court.

Section 506 relates to the seizure and destruction of merchandise at a port of entry. It has no relation to the condemnation and destruction of merchandise that has entered the commerce of the United States.

Exhibit 4 produced by the importer contains these following paragraphs:

It appears therefore that the shipment referred to in your letter was actually seized under Section 10 of the Food and Drugs Act after it had been entered through Customs and transported to New York. The goods were later destroyed by order of court.

It becomes apparent from the above that the product was no longer in import status when sampled and seized, and in view of the fact that imports of these filthy Canadian fish are controlled and their sale in the United States prevented only with the greatest difficulty, we urge that every legal obstacle possible be placed against their importation and that firms entering them be made to suffer all losses and penalties and, therefore, that application of Fred K. Lovell, Customhouse Broker, for refund of duty be denied.

The argument of the plaintiff undertakes to raise a defense that if the merchandise had been inspected by the Department of Agriculture at Rouses Point it might have been found unfit for human consumption there and had that been done the importer might have escaped the payment of duty. This argument is speculative in character. There is nothing in the record that discloses what the nature of the impurity was that rendered these fish unfit for human consumption. If it had been a matter observable upon such inspection as a customs examiner is required to make, we must presume the examiner would have detected the defect. If it was of such character that it would require internal examination of the fish it would not have been observed. This character of examination, we presume, is made by an official of the Food and Drug Administration, and the only way an importer can avoid the possibility of having food of this kind released to him would be to procure an inspection at the border by the Food and Drug Administration. There is nothing in this record that discloses any impurity in this food product which would have warranted its rejection at the border by the customs officials.

The importer himself seems to consider that he had no basis for legal action but seeks to create some sort of an equitable situation which he hopes might bring him relief. This court, of course, cannot contemplate any such situation.

The plaintiff's claim is overruled. Judgment will be rendered accordingly. It is so ordered.